UNITED STATES DISTRICT COURT.
SOUTHERN DISTRICT OF NEW YORK

RAJ CHAHAL,

        Plaintiff,

-against-

NEW YORK CITY HEALTH + HOSPITALS CORPORATION and DIMITRI GIANNARIS

        Defendants.

Case No.:

Plaintiff RAJ CHAHAL ("Ms. Chahal" or "Plaintiff"), by and through her attorneys, FISHER TAUBENFELD LLP, alleges against NYC HEALTH + HOSPITALS CORPORATION ("The Organization" or "HHC") and GEORGE TRISTER ("Defendant Trister" or "Individual Defendant") (collectively "Defendants") as follows:

## NATURE OF THE ACTION

1. This action arises from Defendants' discriminatory and retaliatory conduct against Plaintiff based on her gender and complaints of discrimination.

**2.** Plaintiff brings this action pursuant to New York City Human Rights Law, codified in the Administrative Code of the City of New York §§ 8-101 *et seq.* ("NYCHRL" or "City Law"), and the New York State Human Rights Law ("NYSHRL"), codified in the New York State Executive Law Article 15 §§ 290 *et. seq.*, to remedy Defendants' gender discrimination and unlawful termination of her employment in retaliation for her complaints. Defendants committed these unlawful acts intentionally and willfully, with knowledge that they were violating City and State Law and that Plaintiff would be economically injured.

3. Legal relief is sought pursuant to City and State Law.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under 28 U.S.C § 1332, which confers original jurisdiction upon this Court for actions in which there is a diversity of citizenship.

5. As of the date of the filing of this Complaint, Plaintiff is domiciled in Canada.

6. Upon information and belief, all Defendants are domiciled in New York State.

7. No Defendant is domiciled in the same State as the Plaintiff.

8. The value of the matter in controversy here exceeds $75,000.

9. Venue is proper in this District under 28 U.S.C. § 1367(b) and (c) in that Defendants conduct business in this District and the acts and/or omissions giving rise to the claims alleged herein took place in this District.

10. Pursuant to §8-502(c) of the City Law, within ten (10) days of filing this Complaint, Plaintiff shall serve a copy of this Complaint on the New York City Commission on Human Rights and the Corporation Counsel of the City of New York.

## THE PARTIES

### *Plaintiff*

11. Ms. Chahal is an adult individual who resided in New York during the relevant time period and currently resides in Canada.

12. Ms. Chahal was employed by Defendants from November 2021 until January 2022.

13. Ms. Chahal was at all times material hereto an "employee" of Defendants within the meaning of City Law, and therefore protected from discrimination and retaliation.

14. Ms. Chahal was at all times material hereto a "person" within the meaning of State Law, and therefore protected from discrimination and retaliation on the basis of gender.

*Defendants*

15. Upon information and belief, HHC is a nonprofit corporation organized and existing under the laws of the State of New York, which maintains a place of business at 234 East 149th Street, Bronx, NY, 10451.

16. At all relevant times hereto, HHC has continuously employed (4) or more people and accordingly is an employer within the definition of City Law.

17. At all relevant times hereto, HHC has been an employer within the definition of State Law.

18. Defendant Dimitri Giannaris was at all relevant times Plaintiff's direct supervisor.

19. Plaintiff reported to Defendant Giannaris at all times during her employment at the Hospital.

20. Defendant Giannaris supervised Plaintiff and had the power to discipline her and control the terms and conditions of her employment.

21. Plaintiff first complained to Defendant Giannaris about her treatment by Dr. Trister.

22. Defendant Giannaris is an employer individually liable under City and State Law for discrimination against Plaintiff, given that he had power to do more than carry out personnel decisions made by others.

23. Defendant Giannaris recommended, participated in, and/or carried out the adverse actions against Plaintiff and aided and abetted in the discriminatory acts against Plaintiff.

**FACTUAL ALLEGATIONS**

24. Dr. Chahal commenced employment for HHC as an attending anesthesiologist at Lincoln Hospital on November 5, 2021.

25. At all times during her employment, Dr. Chahal was qualified for her position and carried out her job duties with diligence and care, consistently meeting or exceeding her manager's legitimate performance expectations.

26. Dr. Chahal is double board certified and has maintained a pristine record throughout her career without any adverse patient outcomes, including during her year of training in the ICU at the University of Chicago.

27. During her employment at Lincoln Hospital, Dr. Chahal frequently stepped in to take on-call shifts for her coworkers and supervisors, and in her first month she shouldered eight 24-hour shifts, past the usual monthly maximum of six.

28. Starting in the first week of her employment, Dr. Chahal was subject to demeaning and aggressive gender-based harassment from a senior doctor, George Trister.

29. While working in an operating room on November 12th, Dr. Chahal requested help to get a piece of equipment she needed. Dr. Trister answered the call and proceeded to displace Dr. Chahal at the head of her patient's bed, unnecessarily took over treatment of the patient, and scolded Dr. Chahal on rudimentary medical knowledge in a condescending and humiliating manner.

30. At the time Dr. Trister entered the room, Dr. Chahal's patient was stable, already at 100% saturation, and ventilating through an LMA.

31. When Dr. Chahal spoke to her supervisor, Dr. Giannaris, about her experience with Dr. Trister later that day, saying that she had never before experienced that kind of behavior, Dr. Giannaris laughed it off, saying that Dr. Trister was an "acquired taste" but was also a mentor to him, one of his oldest friends, and that they were quite close.

32. A few weeks later, on December 7th, Dr. Chahal was in the break room speaking about her excitement to take on an upcoming case. Dr. Trister, who was present in the

4

break room but not speaking directly with Dr. Chahal, spoke up and made a series of demeaning comments to her, including: "Why are you so eager?" "Stop acting like that," "You're too soft," "You're not going to last long here."

33. On many occasions, Dr. Trister physically mimicked Dr. Chahal, mocking her and "correcting" the way she walked or stood. Dr. Chahal attempted to limit her interactions with Dr. Trister by remaining in her office and avoiding him.

34. On yet another occasion early in her employment, Dr. Chahal was present when Dr. Trister stated in a frustrated tone to a pregnant female physician that given her "condition," he would have to handle all her orthopedic cases while on call that weekend.

35. On January 3rd, Dr. Chahal was ending a 24-hour shift and briefly entered the break room to ask Dr. Trister where another doctor's office was so she could hand off a pager.

36. Dr. Trister immediately began to berate her with a raised voice, saying that he didn't know where the other doctor's office was while mocking her body language and telling her to calm down.

37. Shortly after this interaction, she witnessed another attending doctor, a man, ask a very similar question of Dr. Trister and receive a pleasant and cordial response.

38. Dr. Chahal spoke to Dr. Giannaris about this interaction by phone, and he responded: "you shouldn't expect to get warm fuzzy feelings from your co-workers" and "you're new to the workforce, this happens everywhere."

39. Dr. Chahal confided in a female gastroenterologist about Dr. Trister's discriminatory behavior. The gastroenterologist told Dr. Chahal that she received similar treatment from Dr. Trister and other men in her department when she first started working at Lincoln, and that a colleague advised her about how to handle workplace harassment.

40. The gastroenterologist shared that Dr. Trister questioned her skill and patient outcomes in a loud and humiliating manner, but did not question men.

41. The gastroenterologist discouraged Dr. Chahal from going to Human Resources (HR) and said that HR would not help her. Instead, she recommended that Dr. Chahal read an article that was posted on her wall about workplace harassment.

42. On December 16th, Dr. Chahal met with Dr. Giannaris to discuss the timing of her rotation into the obstetrics department.

43. Dr. Giannaris had indicated that attending physicians should speak with him about the terms and conditions of their employment and that some flexibility was available with the timing of rotations.

44. Dr. Chahal expressed that she did not feel quite ready for obstetrics, but would move there on the planned schedule if that was what was required.

45. Dr. Giannaris adjusted the planned schedule based on her request so that Dr. Chahal would have more time before moving into obstetrics.

46. After her interaction with Dr. Trister on January 3rd, Dr. Giannaris called Dr. Chahal about an unrelated work matter. On this phone call, Dr. Chahal told him that she had an issue that she wanted to address. He replied, "OK, give me your one-liner." She responded that Dr. Trister had treated her disrespectfully, that it made her uncomfortable, and that she wanted to speak about it when Dr. Giannaris had the opportunity.

47. On January 6th, Dr. Chahal again needed to hand off a pager after another 24-hour shift, but could not locate the next person on call to receive the pager. She texted Dr. Giannaris to ask what to do. Dr. Giannaris informed her to ask anyone in the common area. At this stage, Dr. Chahal did not feel safe asking simple questions at work. She responded that Dr. Trister was the only person in the common area, and that the last time she asked him a question about

handing off a pager, she was mocked. Dr. Giannaris replied that they would talk in person about this issue, but this was the last time they ever spoke on this topic until her termination.

48. After this point, every direct communication between Dr. Chahal and Dr. Giannaris was by page or about work matters only.

49. Out of the seventeen attending physicians employed at the hospital at this time, only four were women.

50. Several of Dr. Chahal's female co-workers validated her concerns of gender-based discrimination and shared their own experiences, but discouraged her from going to HR with her concerns out of fear that she may be retaliated against.

51. Nevertheless, on January 12th, Dr. Chahal felt that she had to address the issue, and spoke with Isabel Barros, an HR representative at the hospital.

52. Ms. Barros told Dr. Chahal that she needed to speak with William Sullivan, and copied Dr. Chahal on an email with him so they could connect.

53. Dr. Chahal emailed Mr. Sullivan on January 13th to set up a time to discuss her concerns, but did not hear back from him.

54. On January 14th, Dr. Chahal was called into a meeting with Dr. Giannaris and William Sullivan and was informed that she was being terminated.

55. Dr. Giannaris made several false claims about Dr. Chahal's performance, and refused to let her see complaints he alleged that surgeons had made about her.

56. Dr. Chahal had not previously been made aware of any of these complaints, and none of her work had ever led to any undesirable patient outcomes.

57. Defendants' unlawful termination of Dr. Chahal and unfounded accusations of negligence have a devastating impact on her career and future.

58. Because her work was connected to her visa status, she has been forced to leave the country, and is unable to use the two United States-based certifications that she spent an enormous amount of time and resources to achieve.

59. At no time did Defendants take action to investigate Dr. Chahal's claims or to address Dr. Trister's conduct.

**FIRST CAUSE OF ACTION**
**(Discrimination on Basis of Gender**
**in Violation of City Law)**

60. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

61. By the acts and practices described above, Defendants discriminated against Plaintiff on the basis of her gender by creating a hostile work environment and terminating her employment in violation of City Law.

62. Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiff's statutorily protected rights.

63. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to her reputation as a proximate result of Defendants' discriminatory practices, unless and until this Court grants the relief hereinafter described.

**SECOND CAUSE OF ACTION**
**(Discrimination on Basis of Gender**
**in Violation of State Law)**

64. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

65. By the acts and practices described above, Defendants discriminated against Plaintiff on the basis of her gender by creating a hostile work environment and terminating her employment in violation of State Law.

66. Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiff's statutorily protected rights.

67. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to her reputation as a proximate result of Defendants' discriminatory practices, unless and until this Court grants the relief hereinafter described.

**THIRD CAUSE OF ACTION**
**(Retaliation Based on Plaintiff's Complaints of Discrimination in Violation of City Law)**

68. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

69. By the acts and practices described above, Defendants retaliated against Plaintiff in violation of City Law by terminating her employment because she complained about discrimination based on her gender.

70. Defendants knew that their actions constituted unlawful retaliation and/or acted with malice or reckless disregard for Plaintiff's statutorily protected rights.

71. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to her reputation as a proximate result of Defendants' retaliatory practices, unless and until this Court grants the relief hereinafter described.

**FOURTH CAUSE OF ACTION**
**(Retaliation Based on Plaintiff's Complaints of Discrimination in Violation of State Law)**

72. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

73. By the acts and practices described above, Defendants retaliated against Plaintiff in violation of State Law by terminating her employment because she complained about discrimination based on her gender.

74. Defendants knew that their actions constituted unlawful retaliation and/or acted with malice or reckless disregard for Plaintiff's statutorily protected rights.

75. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, humiliation, and damage to her reputation as a proximate result of Defendants' retaliatory practices, unless and until this Court grants the relief hereinafter described.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants awarding:

A. Compensatory, punitive, mental anguish, pain and suffering damages sustained as a result of Defendants' discriminatory and retaliatory conduct;

B. Prejudgment Interest;

C. Back Pay, Front Pay, and damages for all employment benefits Plaintiff would have received but for the discriminatory and retaliatory acts and practices of Defendants;

D. Plaintiff's costs and reasonable attorneys' fees; and

E. Any relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims for relief to which she has a right to a jury trial.

Dated: June 5, 2023
       New York, New York

Respectfully submitted,

_____
Liane Fisher, Esq. (LF-5708)
FISHER TAUBENFELD LLP
225 Broadway, Suite 1700
New York, New York 10007
Phone: (212) 571-0700
*ATTORNEYS FOR PLAINTIFF*